AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Neal Williams | ) | 3:24-mj-709 |
| | ) | |
| | ) | |

_Defendant(s)_

FILED
RICHARD W. NAGEL
CLERK OF COURT
11/21/24

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  October 2024 to November 19, 2024  in the county of  Montgomery  in the
Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 & 841(b)(1)(C) | conspiracy to possess with intent to distribute and to distribute controlled substances -- including fentanyl and methamphetamine |
| 21 U.S.C. 856(a)(2) | maintaining a drug premises |
| 18 U.S.C. 1512(k) | conspiracy to tamper with evidence |

This criminal complaint is based on these facts:

See Attached Affidavit of Jordan Gula

☑ Continued on the attached sheet.

_Jordan Gula_
_Complainant's signature_

Jordan Gula, FBI SA
_Printed name and title_

Sworn to by reliable electronic means -- namely, telephone.

Date:  11/21/24

Peter B. Silvain, Jr.
United States Magistrate Judge

City and state:  Dayton, Ohio

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Jordan Gula, hereby duly sworn, declare and state:

## INTRODUCTION

1.     I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), assigned to the Cincinnati Division, Dayton, Ohio Resident Agency.   I therefore am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 21 U.S.C. § 878.   Moreover, I am an "investigative law enforcement officer" within the meaning of 18 U.S.C. § 2510.

2.     I am a Special Agent by the Federal Bureau of Investigation (FBI) and have served in that capacity since January 2016.   I am currently assigned to the FBI's Transnational Organized Crime Task Force which investigates: international drug trafficking matters including, incidents impacting interstate commerce, commercial and home invasion style robberies, carjackings, kidnappings, and assaults on Federal Officers. I have participated in numerous investigations involving violations of federal, state, and local laws, including investigations of multi-national criminal organizations, firearms violations, and drug trafficking violations. As an FBI Special Agent, I have also undergone training to determine how cellular signals interact with cellular towers in order to assist in determining a cell phone's location at a particular point in time.

3.     I have participated in the interception of wire and electronic communications and in the process I have become familiar with the ways in which criminal organizations use cellular telephones to communicate during the multiple phases of criminal actions: planning and coordination, pre-activity surveillance, during execution of the criminal act, and to coordinate the management of the proceeds and commodities acquired during illegal activities.

1

**PURPOSE OF AFFIDAVIT**

4.      I make this affidavit in support of arrest warrants for, and criminal complaints against Neal Williams and Antone Dorsey for violations of:

a.      Title 21, United States Code, §§ 846 and 841(b)(1)(C) (knowing and intentional conspiracy to distribute controlled substances – namely, methamphetamine and fentanyl);

b.      Title 21, United States Code, § 856(a)(2) (maintaining a drug premises);

c.      Title 18, United States Code, § 1512(k) (conspiracy to destroy, alter or conceal an object with intent to impair its integrity or availability for use in an official proceeding).

5.      I have not included every detail of the investigation, but only information necessary to establish probable cause to issue the above-requested criminal complaints and arrest warrants.

**PROBABLE CAUSE**

6.      The FBI and other federal law enforcement have developed information that Williams, Dorsey and others are working together to distribute controlled substances in southern Ohio.  From a review of their criminal histories, I know that both Williams and Dorsey have extensive records, including prior convictions – both state and federal – for drug offenses. Specifically:

a.      Through a review of Williams' criminal history, I learned that, during 2017, he was convicted in this Court for possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of carfentinal.   This Court sentenced him to 84 months of imprisonment to be followed by four years of supervised release. Based on information from the Bureau of Prison's (BOP) public website, Williams was released from BOP custody during August 2022. By the terms the judgment against him, he remains on supervised

2

release to this Court.   Additionally, I have reviewed this Court's November 2020 order denying Williams' then-pending motion for compassionate release. That order detailed his lengthy record. As this Court explained: "Williams's extensive criminal history, which spans two decades, include[s] felony convictions for receiving stolen property (motor vehicle) in 2001, possession of between 200 and 1,000 grams of marijuana in 2003, robbery in 2004, possession of cocaine in 2004, possession of cocaine (again) in 2007, possession of cocaine (yet again) in 2007, trafficking in drugs and tampering with evidence in 2012, and weapons under disability in 2017."

      b.     I have similarly reviewed Dorsey's criminal history and learned that he was convicted in this Court during 2017 of knowingly and intentionally distributing fentanyl analogue. Sentenced to 21 months of imprisonment, he was released from BOP and promptly violated his supervised release in 2020.   In addition to his federal case, Dorsey has sustained two convictions for failure to comply (serious physical harm) during 2021.   As detailed below, Dorsey is currently pending new state charges for failure to comply.

      7.     On or about October 23, 2024, FBI and RANGE Task Force apprehended Adrian Dorsey – a relative of Antone Dorsey -- after a multi-county pursuit that spanned from Dayton, Ohio, to Cincinnati, Ohio. Specifically, police attempted to stop Adrian Dorsey for a traffic violation, but rather than complying with that command, he fled from officers. (Prior to this encounter, law enforcement had developed information that Adrian Dorsey trafficked drugs and frequently carried a firearm with an extended magazine). The pursuit finally ended when officers apprehended Adrian Dorsey in Cincinnati after he abandoned his car and attempted to flee on foot. Adrian Dorsey was booked into the Montgomery County Jail on state charges.   While in state custody on these charges, Adrian Dorsey used the jail's phone system on occasion to contact Williams at phone number subscribed to in Williams' name.   Pursuant to jail policy and for

penological safety, the Montgomery County jail records all outgoing phone calls from inmates. Indeed, when placing an outgoing call, an inmate receives warning that his or her call will be recorded and subject to monitoring.

        a.      On October 27, 2024, Adrian Dorsey placed a call from the jail to Williams. I have reviewed the recording of the call and learned that Adrian Dorsey contacted Williams and instructed Williams to use his other phone to message someone identified as "Kilo D" via Facebook. Adrian Dorsey told Williams to send the following message to Kilo D: "This me bro. If you were coming down, I'm in the county, but my brother can take care of you. If that's cool." Williams then offered to call Kilo D, and Adrian Dorsey agreed for Williams to use Facebook Messenger to make the call. The jail recording then captured the ensuing Facebook Messenger call between Williams and Kilo D. Introducing himself to Kilo D, Williams stated that he was Dorsey's brother. Williams then told Kilo D to call the "(937) 207" number that Williams apparently had typed into a Facebook message. Notably, the number at which Adrian Dorsey had contacted Williams was (937) 207-2930.

        b.      After ending the call with Kilo D, Adrian Dorsey and Williams continued their conversation together over the recorded jail call. Attempting to use coded language, the two discussed controlled substance transactions. For instance, Adrian Dorsey told Williams that "he called" (i.e., the source of drug supply) and he's got "three or four of them" (i.e., a quantity of drugs). Adrian Dorsey then made a semi-intelligible comment concerning the strength of the drug. Adrian Dorsey instructed Williams to "stand firm" on the price of $11. Based on my experience and that of others familiar with drug investigations, $11 is a price commonly associated with fentanyl pills. Corroborating that conclusion, Adrian Dorsey described to Williams a baggie that had the "Barney colored one." Based on my experience and discussions with other law

4

enforcement, I know that Dayton has seen a recent surge in the supply to this area of purple colored fentanyl. Adrian Dorsey then instructed Williams to "run over" the drugs (i.e., to cut the drugs with an adulterant to increase their yield and then re-press them into pill form).

          c.     Based on this call and other information, the FBI sought and obtained a search warrant to collect location information from William's cellular telephone.

8.     During early November 2024, the state of Ohio indicted and arrested Dorsey (i.e., Antone Dorsey) for failure to comply. Initially released on bond – including an ankle location monitor -- Dorsey soon violated the conditions of his release, and the state court issued a warrant for his arrest on or about November 19, 2024.

9.     That same day, law enforcement began to search for Dorsey to serve the active arrest warrant.  (Notably, Dorsey had advised his location monitoring service that he resided at 531 Belmonte Park Lane, Dayton, Ohio apartment 504.)   Officers reviewed location information from Dorsey's ankle monitor, and it frequently placed him at or near Park Layne Apartments, Apartment 904, 531 Belmonte Park Lane, Dayton, Ohio.   Law enforcement also gathered information from an informant – CS-1 – concerning Dorsey's whereabouts.  CS-1 advised that Dorsey lived with Williams at an apartment in the Park Layne complex and that CS-1 had observed kilograms of drugs in their apartment.   Officers contacted the management company for the Park Layne apartment complex, and it advised that Williams was on the lease for Apartment 904 and that Dorsey was in the unit with Williams.  Notably, the federal-court authorized collection of location from Williams' cellular telephone also placed him in the vicinity of that unit.

10.    On or about November 19, 2024, at approximately 2:00 p.m., law enforcement approached Apartment 904, knocked on its door, and identified themselves as police there to arrest Dorsey on his active warrant.  (Agents also had established a parameter in the area surrounding

5

the unit). After knocking, officers heard movement inside of the unit and soon observed several baggies of drugs being tossed from the balcony of Apartment 904. (The baggies were later seized and contained blue pills consistent with pressed fentanyl pills, an unknown white powdery substance weighing approximately 180 grams, and 12 grams of a substance that tested positive on the scene for the presence of methamphetamine). Given the efforts to destroy and conceal evidence as well as Dorsey's presence in the unit, agents entered the unit and began to clear its occupants; law enforcement, among other things, intended to secure the unit and to prevent efforts to destroy evidence until they could obtain a search warrant. Upon entering the apartment and during the protective sweep of it, officers saw in plain view drug processing equipment, large amounts of U.S. currency, and suspected narcotics on the bathroom floor as though someone had been attempting to flush them down the toilet). Agents located Williams in the unit; he was pretending to be asleep in the bedroom adjacent to the bathroom where agents observed suspected drugs on the ground. Dorsey was also located there and detained.

11.     Law enforcement obtained a state search warrant for Apartment 904 and found within it evidence that its occupants – namely, Dorsey and Williams – were using the apartment to store and process controlled substances. Specifically, agents located substances used to cut drugs and increase their yields, a blender with drug residue on it (which drug dealers use to mix controlled substances), and packaging materials. Agents also collected from the bathroom floor suspected controlled substances that it appeared someone – likely, Williams – had attempted to flush down the toilet. Notably, agents found purple colored powder in the residence, consistent with Williams recorded conversation with Adrian Dorsey concerning the "Barney" colored drugs. Officers also found a handgun in the unit along with several thousand dollars in cash. Given the efforts of Dorsey and Williams to jettison the distribution quantity of methamphetamine from the

6

residence as well as their efforts to destroy suspected fentanyl, I believe that they were working together to conceal their drug operation and prevent law enforcement from collecting this evidence of their drug operation for use in a future prosecution.   Additionally, law enforcement found in the unit indicia of occupancy linking both Williams and Dorsey to the unit, including mail and/or legal paperwork in their respective names.

## CONCLUSION

12.     Based on the facts set forth in the Affidavit, I believe there is probable cause to issue the requested criminal complaints against Antone Dorsey and Neal Williams.

*Jordan Gula*
_____
Jordan Gula
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me on this
 21st day of November 2024

_____
Peter B. Silvain, Jr.
United States Magistrate Judge

7